**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

| | | |
|---|---|---|
| CNX GAS COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| MILLER ENERGY RESOURCES, INC., | ) | **JURY DEMANDED** |
| CHEVRON APPALACHIA, LLC as successor in | ) | |
| interest to Atlas America, LLC, CRESTA | ) | |
| CAPITAL STRATEGIES, LLC, and | ) | |
| SCOTT BORUFF, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES the Plaintiff, CNX Gas Company LLC ("CNX" or "Plaintiff"), by counsel, and for its Complaint states as follows:

### I. Jurisdiction and Venue

1.      This is an action for breach of contract and inducement to breach contract. As shown below, the amount in controversy exceeds $75,000.00 exclusive of interest and costs. The parties are citizens of different states, also as shown below. Accordingly, this Court has original jurisdiction. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because the subject of this dispute is real property located in Campbell County, Tennessee.

### II. Parties

2.      Plaintiff CNX is a Virginia limited liability company and is registered to conduct business in the State of Tennessee.

3.      Miller Energy Resources, Inc. ("Miller"), formerly doing business as Miller Petroleum, Inc. is, upon information and belief, a Tennessee corporation, and process may be served upon its registered agent, Deloy Miller, 3651 Baker Highway, Huntsville, Tennessee 37756.

4.      Chevron Appalachia, LLC ("Chevron" or "Atlas") is a Pennsylvania limited liability company, and process may be served upon its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203. Chevron is the successor in interest to Atlas America, LLC.

5.      Cresta Capital Strategies, LLC ("Cresta") is a New York limited liability company, and process may be served through the New York Secretary of State by hand delivering copies of the process to the Secretary of State, 1 Commerce Plaza, 99 Washington Avenue, Albany, New York 12210.

6.      Scott Boruff is a resident of Knox County, Tennessee and may be served at his residence at 5628 Lyons View Pike, Knoxville, Tennessee 37919.

### III. Facts

7.      CNX, Miller and Chevron all engage in the business of oil and natural gas acquisition, exploration, extraction and sales.

8.      Miller was the owner of certain leasehold interests in Campbell County, Tennessee that contained valuable natural resources, including oil and natural gas and consisting of approximately 30,000 acres (the "Leases"). At some point prior to 2008, Miller entered into a joint venture with Wind City Oil & Gas, LLC ("Wind City"), a non-party to this action, regarding the working of approximately 27,620 acres of the Leases (this portion of the Leases is referred to as the "Koppers Leases"). The remaining portion of the Leases consisted of

approximately 1,952 acres (the "Miscellaneous Leases"). Upon information and belief, this joint venture resulted in litigation between Miller and Wind City in the United States District Court for the Southern District of New York.

9.      In early 2008, Miller's litigation with Wind City had progressed to the point that Miller and Wind City engaged in settlement discussions to re-assign the Koppers Leases to Miller. Upon information and belief, Miller did not have the financial ability to fund such settlement. Consequently, Miller began to market the Leases for assignment to a third party purchaser. Miller intended to use the proceeds from any sale of the Leases to fund the settlement with Wind City.

10.      As part of its marketing process, Miller engaged Cresta through an Investment Banking Agreement in which Cresta would attempt to broker certain transactions, including a transaction with the Leases. Cresta employed Scott Boruff as an investment banker. Scott Boruff is currently the Chief Executive Officer for Miller and is the son-in-law of Deloy Miller, the Chief Executive Officer for Miller at the time of the transactions at issue in this action.

11.      Atlas expressed interest in purchasing the Leases from Miller beginning on or about March, 2008. Upon information and belief, Atlas made several offers to Miller to purchase the Leases from March to May, 2008 without reaching an agreement.

12.      On May 29, 2008 CNX e-mailed a signed Letter of Intent to Miller and Cresta, through Scott Boruff, for the Leases. On or about May 30, 2008, Miller executed the Letter of Intent, a copy of which is attached hereto as <u>Exhibit 1</u>, whereby Miller agreed to assign the Leases, expressly including the Koppers Leases, to CNX, as more specifically described in the Letter of Intent (said transaction being hereinafter referred to as the "Assignment"). The amount to be paid to Miller by CNX for this Assignment was approximately $13,000,000.00. Cresta,

through Scott Boruff, participated in the negotiation of the Letter of Intent and the terms were made to reflect the negotiated discussions between CNX, Miller and Cresta.

13.     The Letter of Intent stated that CNX and Miller were to close on the Assignment by 5:00 p.m. on Friday, June 6, 2008 at the offices of Miller at 3652 Baker Hwy, Huntsville, Tennessee 37756.  [Exh. 1, ¶2]

14.     Miller informed CNX about the Wind City dispute prior to the execution of the Letter of Intent. Under the Letter of Intent, Miller was obligated to convey good and marketable title to the Leases to CNX upon execution of the Assignment, including for the Koppers Leases. [Exh. 1, ¶1.a]

15.     The Letter of Intent further provided that "the Leases shall be assigned to CNX with a warranty against the claims of any and all persons claiming by, through, or under Miller." [Exh. 1, ¶1.b]

16.     Miller knew that it was required to obtain possession of the Koppers Leases held by its joint venture with Wind City by June 6, 2008, the date designated for closing on the Assignment of the Leases from Miller to CNX.

17.     The Letter of Intent further provided for an exclusivity period from the date of its execution to June 6, the closing date on the Assignments (the "Exclusivity Period"):

> Miller Petroleum shall not during such period solicit or entertain any offers or proposals of, or enter into any agreements with, third parties to acquire an interest in the Leases, nor negotiate or discuss the sale of an interest in the Leases ….

[Exh. 1, ¶2].

18.     Pursuant to the Letter of Intent, CNX paid Miller One Million Dollars ($1,000,000.00) on or about May 30, 2008 in order to retain the exclusive option and right, until 5:00 p.m. on Friday, June 6, 2008 to enter into the Assignment with Miller.

19.     Upon information and belief, shortly after the execution of the Letter of Intent, Miller entered into a settlement agreement with Wind City to re-acquire the Koppers Leases. The deadline for closing on this agreement was set for June 13 – one week after the expiration of the Letter of Intent.

20.     Upon information and belief, shortly after the execution of the Letter of Intent and during the Exclusivity Period, Cresta, through Scott Boruff, began communications with Atlas about the Leases and the Letter of Intent with CNX. Upon information and belief, Boruff revealed to Atlas the terms of the Letter of Intent (including the price, the closing date, the parties, and the existence of the Exclusivity Period) and the terms of the settlement agreement with Wind City.

21.     On June 1, 2008, Atlas, with full knowledge of CNX's Letter of Intent and its Exclusivity Period, submitted a competing offer for the Leases (the "Atlas Offer") to Cresta and Miller by e-mail to Miller and Scott Boruff. Atlas' competing offer increased the purchase price to over $19 million and had a closing date of June 13 – the same day as the expiration for the Wind City settlement agreement.

22.     Upon information and belief, Cresta, through Scott Boruff, and Miller reviewed the Atlas Offer during the Exclusivity Period. Boruff informed Miller of the terms of the Atlas Offer, including the closing date and the purchase price, during the Exclusivity Period. Miller forwarded the Atlas Offer and a definitive purchase agreement from Atlas to its attorney during the Exclusivity Period. Upon information and belief, Cresta, Boruff, Atlas and Miller conspired to breach the Letter of Intent with CNX.

23.     Miller, Cresta, and Boruff, after learning of the Atlas Offer, intentionally sought to avoid closing with CNX on the Letter of Intent in order to accept the more favorable terms of

the Atlas Offer. Upon information and belief, Miller intentionally delayed the paperwork and further negotiations necessary to close its re-acquisition of the Koppers Leases from Wind City pursuant to their settlement agreement. By June 6, 2008, the closing date under the CNX Letter of Intent, Miller had not re-acquired the Koppers Leases from Wind City.

24.    On Friday, June 6, 2008, CNX's Vice President for Land Resources, William D. Gillenwater ("Gillenwater"), and other CNX representatives appeared at the offices Miller in Huntsville, Tennessee and tendered full performance contemplated under the Letter of Intent in order to complete and "close on" the Assignment. Gillenwater and CNX's other representatives waited several hours at Miller's offices after first tendering performance pursuant to the Letter of Intent, through and after 5:00 p.m. on June 6, 2008.  However, Miller's Chief Executive Officer, Deloy Miller, who had signed the Letter of Intent on Miller's behalf, informed CNX that Miller refused to complete and close on the Assignment or to extend CNX's option, and, subsequently, Miller returned CNX's $1,000,000.00 payment to CNX.

25.    Upon information and belief, Miller was in possession of some, but not all, of the Leases (the Miscellaneous Leases) when Miller refused to complete and close on the Assignment or to extend CNX's option on June 6, 2008.  When Miller refused to close on the Assignment, it refused to convey to CNX even those Leases that Miller had in its possession on June 6, 2008. The Letter of Intent did not permit Miller to refuse to close. Instead, the Letter of Intent specifically contemplated and expressed a method for CNX to close on the Miscellaneous Leases and any of the Koppers Leases for a reduced price. Miller refused to close on any portion of the Leases.

26.    Upon information and belief, Miller resumed work on re-acquiring the Koppers Leases from Wind City after the expiration of the Letter of Intent even though Miller refused to

extend the deal with CNX and even though Miller did not have the financial ability to close with Wind City without a purchaser of the Koppers Leases. Upon information and belief, Miller continued this negotiation process with Wind City in furtherance of its conspiracy with Cresta and Atlas.

27.     On or about June 11, 2008, Miller and Atlas entered into an agreement for assignment of the Leases. Two days later, Miller re-acquired the Koppers Leases from Wind City and, soon thereafter, Miller closed on its assignment of the Leases with Atlas.

## COUNT I: BREACH OF CONTRACT BY MILLER

28.     The allegations in all foregoing paragraphs of this Complaint are incorporated herein as if fully restated.

29.     By refusing to close on the Assignment on June 6, 2008 as contemplated in the Letter of Intent, Miller breached the Letter of Intent.

30.      By soliciting or entertaining offers or proposals of, or entering into any agreement(s) with, Atlas and/or other third parties for Atlas and/or other third parties to acquire an interest in the Leases, and negotiating or discussing the sale of an interest in the Leases with Atlas and/or other third parties, during the Exclusive Period, Miller breached the Letter of Intent.

31.     As a direct result of Miller's breaches of the Letter of Intent, CNX suffered damage.

## COUNT II: INDUCEMENT OF BREACH OF CONTRACT/CONSPIRACY TO INDUCE BREACH OF CONTRACT AND TO INTERFERE WITH A BUSINESS RELATIONSHIP AND CONTRACT/INTERFERENCE WITH CONTRACTUAL RELATIONS IN VIOLATION OF COMMON LAW AND TENNESSEE CODE SECTION 47-50-109 BY CHEVRON, CRESTA, AND BORUFF

32.     The allegations in all foregoing paragraphs of this Complaint are incorporated herein as if fully restated.

33.     The Letter of Intent is a legal contract between Miller and CNX.

34.     With knowledge of the Letter of Intent, its terms, and the business relationship between Miller and CNX, Atlas, Cresta, and Boruff intended to induce breach of the Letter of Intent and the business relationship, and in fact did induce its breach and the termination of Miller and CNX's business relationship, and acted maliciously to do so by negotiating and/or offering and agreeing to purchase the Leases with knowledge of the Letter of Intent and in contravention of CNX's rights under the Letter of Intent—which acts proximately caused Miller's breach and refusal to close on the Assignment of the Leases on June 6, 2008, in breach of the Letter of Intent, thereby damaging CNX.

35.     Atlas's, Cresta's, and Boruff's acts inducing Miller's breach of the Letter of Intent were committed intentionally, fraudulently, maliciously, and/or recklessly.

36.     CNX has suffered damages as a result of the breach of the Letter of Intent.

WHEREFORE, Plaintiff prays that the Court act and enter judgment against Defendants as follows:

1.     Process be issued and all Defendants be brought before the Court;

2.     A jury be empanelled to hear this cause;

3.     Judgment against Miller in such an amount of damages as may be determined at the trial of this case;

4.     Judgment against Chevron, Cresta, and Boruff for conspiracy to breach, inducing Miller's breach of the Letter of Intent, and tortious interference therewith and with the business relationship, in the amount of:

   a.     CNX's compensatory damages and treble damages pursuant to Tennessee Code Annotated section 47-50-109; or

b. CNX's compensatory damages and punitive damages up to the maximum

constitutional multiplier of CNX's compensatory damages; and

4. Any other relief allowed by law and deemed just and proper.

Respectfully submitted,

**CNX GAS COMPANY LLC**

By:   /s/ Charles w. Van Beke
Charles W. Van Beke, BPR #001335
W. Edward Shipe, BPR #23887
Wagner, Myers & Sanger, P.C.
1801 First Tennessee Plaza
P.O. Box 1308
Knoxville, TN 37901-1308
(865) 525-4600
(865) 291-0419 (fax)