UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CNX GAS COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-362 |
| | ) | (VARLAN/SHIRLEY) |
| MILLER ENERGY RESOURCES, INC., | ) | |
| CHEVRON APPALACHIA, LLC, *as* | ) | |
| *successor in interest to Atlas America, LLC*, | ) | |
| CRESTA CAPITAL STRATEGIES, LLC, | ) | |
| SCOTT BORUFF, and ATLAS ENERGY | ) | |
| TENNESSEE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on two motions filed by defendant Chevron Appalachia, LLC ("Chevron"): (1) a Motion to Dismiss or in the Alternative Motion for Summary Judgment [Doc. 19], and (2) Chevron Appalachia, LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 36]. With respect to the motion to dismiss [Doc. 19], plaintiff filed a motion to convert defendant's motion into one solely for summary judgment [Doc. 23], which the Court previously denied [Doc. 28]. Plaintiff then filed a response to the motion to dismiss or, alternatively, for summary judgment [Doc. 31]. No reply was filed, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2. With respect to the motion to dismiss for lack of subject matter jurisdiction [Doc. 36], plaintiff filed a response in opposition, alternatively seeking jurisdictional discovery [Doc. 42], and Chevron replied [Doc. 45]. After carefully considering the motions, the Court will grant the

motion to dismiss for lack of subject matter jurisdiction and deny as moot the motion to dismiss, or alternatively, for summary judgment.

I.  **Background**

Plaintiff, CNX Gas Company LLC, ("plaintiff" or "CNX") and defendants Miller Energy Resources, Inc. ("Miller") and Chevron, successor in interest to Atlas America, LLC, are engaged in the business of oil and natural gas acquisition, exploration, extraction, and sales [Doc. 49 ¶ 8]. Miller allegedly was the owner of certain leasehold interests in Campbell County, Tennessee that contained valuable natural resources, including oil and natural gas, consisting of approximately 30,000 acres (the "Leases") [*Id*. ¶ 9].

At some point prior to 2008, plaintiff asserts, Miller entered into a joint venture with Wind City Oil & Gas, LLC ("Wind City") regarding the working of approximately 27,620 acres of the Leases (the "Koppers Leases") [*Id*.].[1] Upon information and belief, plaintiff alleges the joint venture resulted in litigation between Miller and Wind City in the United States District Court for the Southern District of New York [*Id*.]. The parties eventually engaged in settlement negotiations to re-assign the Koppers Leases back to Miller [*Id*. ¶ 10]. Plaintiff asserts upon information and belief that Miller did not have the financial ability to fund such settlement and began to market the Leases for assignment to a third-party purchaser so that the proceeds could be used to fund the settlement with Wind City [*Id*.].

---

[1] Plaintiff alleges that the remaining portion of the Leases consisted of approximately 1,952 acres (the "Miscellaneous Leases") [Doc. 49 ¶ 9].

2

As part of this marketing process, plaintiff alleges, Miller engaged defendant Cresta Capital Strategies, LLC ("Cresta") through an Investment Banking Agreement, pursuant to which Cresta would attempt to broker certain transactions, including a transaction regarding the Leases [*Id*. ¶ 11]. Cresta employed Scott Boruff ("Boruff"), who currently is the Chief Executive Officer for Miller and the son-in-law of Deloy Miller, the Chief Executive Officer for Miller at the time of the transactions underlying this litigation [*Id*.].

Plaintiff alleges that Atlas America LLC ("Atlas America") expressed an interest in purchasing the Leases from Miller beginning around March 2008 [*Id*. ¶ 12]. Upon information and belief, plaintiff claims Atlas America made several offers to purchase the Leases from March to May 2008 without reaching an agreement [*Id*.].

On May 29, 2008, plaintiff alleges it emailed a signed letter of intent to Miller and Cresta for the Leases, which was executed on May 30, 2008 (the "Letter of Intent") [*Id*. ¶ 13].[2] Plaintiff asserts that Boruff participated in the negotiation of the Letter of Intent and the terms thereof were made to reflect the negotiated discussions between plaintiff, Miller, and Cresta [*Id*.].

Pursuant to the Letter of Intent, Miller agreed to assign the Leases, including the Koppers Leases, to plaintiff for $13,000,000 (the "Assignment") [*Id*.]. The Letter of Intent stated that Miller was obligated to convey good and marketable title to the Leases to plaintiff upon execution of the Assignment, and that plaintiff and Miller were to close on the

---

[2]Plaintiff attaches the Letter of Intent as Exhibit 1 to the amended complaint.

3

Assignment by 5:00 p.m. on Friday, June 6, 2008, at Miller's offices in Tennessee [*Id*. ¶¶ 14, 15]. Plaintiff alleges that Miller informed plaintiff about the Wind City dispute prior to the execution of the Letter of Intent and that Miller knew that it was required to obtain possession of the Koppers Leases held by its joint venture with Wind City by June 6, 2008 [*Id*. ¶¶ 15, 17]. The Letter of Intent further provided that "the Leases shall be assigned to CNX with a warranty against the claims of any and all persons claiming by, through, or under Miller" [*Id*. ¶ 16]. In addition, it included an exclusivity period from the date of its execution through June 6, 2008 (the "Exclusivity Period") [*Id*. ¶ 18]. Plaintiff paid Miller $1,000,000 on or about May 30, 2008, in order to retain the exclusive option and right to enter into the Assignment with Miller until 5:00 p.m. on Friday, June 6, 2008 [*Id*. ¶ 19].

Upon information and belief, plaintiff alleges that, shortly after the execution of the Letter of Intent, Miller entered into a settlement agreement with Wind City to reacquire the Koppers Leases, and the deadline for closing on the agreement was June 13, 2008 [*Id*. ¶ 20]. Also upon information and belief, plaintiff alleges that, during the same time period, Cresta, through Boruff, began communications with Atlas America about the Leases and the Letter of Intent with plaintiff, and Boruff revealed to Atlas America the terms of the Letter of Intent and the settlement agreement with Wind City [*Id*. ¶ 22].

On June 1, 2008, plaintiff asserts, Atlas America submitted to Cresta and Miller a competing offer for the Leases, offering to pay $19,000,000 with a closing date of June 13, 2008 [*Id*. ¶ 22]. Upon information and belief, plaintiff claims that Cresta, through Boruff,

and Miller reviewed Atlas America's offer during the Exclusivity Period and Boruff informed Miller of the terms of Atlas America's offer during that time [*Id*. ¶ 23]. Further, plaintiff claims Miller forwarded Atlas America's offer to its attorney during this time as well [*Id*.].

Plaintiff asserts, upon information and belief, Cresta, Boruff, Atlas America, and Miller conspired to breach the Letter of Intent, and intentionally sought to avoid closing with plaintiff in order to accept the more favorable terms of Atlas America's offer [*Id*. ¶¶ 23, 24]. In particular, plaintiff claims Miller intentionally delayed the paperwork and further negotiations necessary to close its reacquisition of the Koppers Leases from Wind City pursuant to their settlement agreement [*Id*. ¶ 24].

On Friday, June 6, 2008, plaintiff asserts that its Vice President for Land Resources, William D. Gillenwater, and other representatives of plaintiff appeared at Miller's offices in Tennessee and tendered full performance under the Letter of Intent in order to close on the Assignment [*Id*. ¶ 25]. Plaintiff's representatives allegedly waited several hours, through and after 5:00 p.m., however, Deloy Miller informed plaintiff that Miller refused to complete and close on the Assignment or extend plaintiff's option and returned the $1,000,000 payment [*Id*.].

Plaintiff alleges that Miller was in possession of the Miscellaneous Leases when Miller refused to complete and close on the Assignment or extend plaintiff's option on June 6, 2008 [*Id*. ¶ 26]. However, plaintiff alleges, the Letter of Intent did not permit Miller to

5

refuse to close; instead; the Letter of Intent specifically contemplated and expressed a method for plaintiff to close on the Miscellaneous Leases and any of the Koppers Leases for a reduced price [*Id.*].

Upon information and belief, plaintiff claims Miller resumed working on reacquiring the Koppers Leases from Wind City after expiration of the Letter of Intent, despite not having the financial ability to close with Wind City without a purchaser of the Koppers Leases [*Id.* ¶ 27]. Plaintiff further claims upon information and belief, that Miller continued this negotiation process in furtherance of its conspiracy with Cresta and Atlas America [*Id.*].

On or about June 11, 2011, Miller and Atlas America allegedly entered into an agreement for assignment of the Leases [*Id.* ¶ 28]. Miller reacquired the Koppers Leases from Wind City two days later, and subsequently closed on its assignment of the Leases with Atlas America [*Id.*].

Plaintiff alleges that by Assignment and Bill of Sale dated February 7, 2011, Chevron assigned the Leases to Atlas Energy Tennessee, LLC ("Atlas Energy"), who assumed the liabilities of, and became and indemnitor for, Chevron for all liabilities arising out of the Leases [*Id.* ¶ 29]. According to plaintiff, such makes Atlas Energy contractually and legally responsible to reimburse Chevron for all damages awarded to plaintiff in this action against Chevron, but does not relieve Chevron of liability [*Id.*].

On the basis of these allegations, plaintiff asserts breach of contract against Miller for breaching the Letter of Intent [*Id.* ¶¶ 30–33]. Plaintiff also asserts against Chevron, Atlas

6

Energy, Cresta, and Boruff inducement of breach of contract, conspiracy to induce breach of contract and to interfere with a business relationship and contract, and interference with contractual relations in violation of common law and Section 47-50-109 of the Tennessee Code [*Id*. ¶¶ 34–38].

In response to the complaint, Chevron filed a motion to dismiss, or alternatively, a motion for summary judgment [Doc. 19].[3] Chevron claims that it is not a proper party to this action because Atlas Energy assumed all liabilities related to the leases that are the subject matter of plaintiff's complaint pursuant to an Assignment and Bill of Sale [*Id*.]. More specifically, Chevron asserts that on February 7, 2011, Atlas America assigned the "Koppers Leases" to Atlas Energy, and the assignment agreement included a clause though which Atlas Energy assumed any alleged liabilities associated with the "Koppers Leases" [*Id*.].[4] Then, on February 17, 2011, Atlas America was purchased by Chevron [*Id*.]. Chevron thus claims that because Atlas America was no longer liable for any alleged liabilities related to the Koppers Leases at the time Chevron purchased Atlas America, Chevron is not a proper party to this action and should be dismissed [*Id*.].

---

[3] The Court notes that the motion was filed prior to plaintiff's amended complaint being filed. The magistrate judge allowed plaintiff to file an amended complaint for the purpose of adding Atlas Energy as a defendant [Doc. 48].

[4] Chevron attaches as an exhibit to its motion the affidavit of John Bonar, Executive Vice Present of Atlas Energy, which addresses the relationship among Atlas America, Atlas Energy, and Chevron and attaches the Assignment and Bill of Sale [Doc. 19-1].

7

Chevron also filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure [Doc. 36]. Chevron argues that it is not diverse from plaintiff because both are citizens of Delaware [*Id*.]. As a result, it requests the Court dismiss it as a party to this action [*Id*.].[5]

## II.     Rule 12(b)(1) Standard of Review

A complaint may be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a motion to dismiss based on lack of subject matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). "A *facial* attack is a challenge to the sufficiency of the pleading itself" and "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing

---

[5]Chevron's request for relief is unclear, as Chevron makes inconsistent statements regarding the relief it seeks throughout its motion papers. Chevron states the "Court has no subject matter jurisdiction over this case," [Doc. 45], seemingly asking the Court to dismiss the entire action [*see also* Doc. 37 (stating plaintiff's "lawsuit should be dismissed for lack of subject matter jurisdiction")], while also stating the "Court does not have subject matter jurisdiction over the claims between the non-diverse parties," [Doc. 37], seemingly asking the Court to dismiss only those claims asserted against Chevron or to dismiss Chevron as a party to this action. Because "Rule 21 of the Federal Rules of Civil Procedure permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19, that is, the party to be dropped must not be a necessary party," *Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994) (footnotes and citations omitted), and because plaintiff has not asserted that Chevron is a necessary party, the Court construes Chevron's motion as only seeking to dismiss Chevron as a party to this action. *See also id*. ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." (alteration in original) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))).

8

*Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). "A *factual* attack, on the other hand, is . . . a challenge to the factual existence of subject matter jurisdiction." *Id.* at 598. With a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of proving that jurisdiction exists. *Gorno Bros.*, 410 F.3d at 881; *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### III. Analysis

"The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998), *abrogation on other grounds recognized by Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010). Subject-matter jurisdiction based on diversity of citizenship is governed by federal statute, which vests federal courts with jurisdiction in cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). Cases based on diversity jurisdiction "demand complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000); *see also Medlen v. Estate of Meyers*, 273 F. App'x 464, 470 (6th Cir. 2008).

Citizenship of the parties is determined at the time of the filing of the lawsuit. *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006).

Plaintiff asserts this Court has jurisdiction on the basis of diversity because the parties are citizens of different states [Docs. 1 ¶ 1, 49 ¶ 1].[6] Relevant to the instant motion, plaintiff asserts it is "a Virginia limited liability company and is registered to do business in the State of Tennessee" [Docs. 1 ¶ , 49 ¶ 2], and that Chevron is "a Pennsylvania limited liability company, and process may be served upon its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203" [Docs. 1 ¶ 4, 49 ¶ 4]. Chevron, however, contends the complaint fails to "set forth the appropriate facts for determining citizenship of the parties as a matter of law" because the citizenship of a limited liability company is determined by the limited liability company's members [Doc. 37]. Plaintiff's opposition brief does not address this contention [*See* Doc. 42].

The citizenship of a limited liability company, like plaintiff or Chevron, is determined by "the citizenship of each of its members." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citation omitted). In assessing the whether diversity jurisdiction exists where limited liability companies are parties, "the court needs to know the citizenship of each member of [each] company[,] and because a member of a limited liability company may itself have multiple members—and thus may itself have multiple

---

[6]The Court notes that the allegations in the complaint [Doc. 1] and the amended complaint [Doc. 49], which was filed after Chevron filed its motion to dismiss for lack of subject matter jurisdiction, contain identical allegations in this regard.

citizenships—the federal court needs to know the citizenship of each 'sub-member' as well." *Id.* (citation omitted). Here, plaintiff has failed to allege facts sufficient for the Court to make this determination. Plaintiff has asserted only that it is a Virginia limited liability company, registered to do business in the State of Tennessee, and that Chevron is a Pennsylvania limited liability company; plaintiff alleges nothing about the members or sub-members of plaintiff or Chevron. Accordingly, and because it is plaintiff's burden to establish subject matter jurisdiction, the Court finds the amended complaint is insufficient and that Chevron should be dismissed as a party to this action because plaintiff has not demonstrated that Chevron is diverse from it. *See Washington v. Sulzer Orthopedics, Inc.*, 76 F. App'x 644, 645 (6th Cir. 2003) ("In a diversity action, 'the plaintiff must state all parties' citizenship such that the existence of complete diversity can be confirmed.'" (citation omitted)); *Boone v. Comcast/Verison*, 3:10-CV-144, 2011 WL 1258050, at *3 (E.D. Tenn. Mar. 31, 2011) ("In the absence of proper allegations establishing diversity of citizenship, the court must presume that subject matter jurisdiction does not exist." (emphasis omitted)).

Chevron also asserts that, even had plaintiff appropriately pled diversity in this case, evidence demonstrates that plaintiff and Chevron are not diverse [Doc. 37]. In particular, Chevron submits that although plaintiff asserts it is a limited liability company registered in the Commonwealth of Virginia, plaintiff admitted in another lawsuit that the sole member of CNX is CNX Gas Corporation, a corporation organized under the laws of the State of Delaware, whose principle place of business is in Pennsylvania [Docs. 36-1, 36-2, 36-3, 37].

11

Thus, plaintiff is a citizen of Delaware and Pennsylvania as well. Chevron also submits it is a citizen of Delaware because its sole member is Chevron AE Operating Company, LLC, a limited liability company organized in the State of Delaware, whose sole member is Chevron AE Resources, LLC, a limited liability company organized in the State of Delaware, whose sole member is Chevron Northeast Upstream Corporation, a corporation organized under the laws of Delaware with its headquarters in San Ramon, California [Docs. 36-4, 37].

Plaintiff asserts in opposition that Chevron's proof of its citizenship, the affidavit of Grace N. Chan [Doc. 36-4], fails to disclose the members of Chevron at the time of the filing of the complaint, August 3, 2011, and is thus deficient [Doc. 42]. Chevron, recognizing that diversity is determined as of the date of the complaint, submitted a supplemental affidavit of Grace N. Chan, who states that the information concerning the citizenship of Chevron set forth in her original affidavit was true as of August 3, 2011, the date the complaint was filed in this case [Doc. 46]. Plaintiff also asserts its own research suggests that the members of Chevron changed after the commencement of this action [Doc. 42]. This argument is moot, however, as the supplemental affidavit of Grace N. Chan evidences the citizenship of Chevron as of the date the complaint was filed. Accordingly, and because plaintiff does not contest it too is a citizen of Delaware, the Court finds plaintiff and Chevron are not diverse and that the Court lacks subject matter jurisdiction over the dispute between them.

Alternatively, to the extent Chevron's motion "is not denied for failure of proof because Chevron fails to establish its domicile on August 3, 2011," plaintiff requests

12

jurisdictional discovery or for the Court to hold the motion in abeyance [Doc. 42]. In support, plaintiff cites the Annual Reports of Chevron filed with the Tennessee Secretary of State, which indicate Chevron increased the number of its members from one to four sometime prior to December 30, 2010, and then reduced the number of members to one sometime prior to December 30, 2011 [*Id*.]. The Court, however, declines to exercise its discretion to grant plaintiff's alternative request. It is unclear how these records demonstrate the parties are or may not be diverse, and there is sufficient information in the record for the Court to determine subject matter jurisdiction. Moreover, the Court has found the complaint is facially deficient.

## IV. Conclusion

For the reasons explained herein, the Court hereby **GRANTS** Chevron Appalachia, LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 36], and Chevron is **DISMISSED** as a party to this action. Accordingly, Chevron's Motion to Dismiss or in the Alternative Motion for Summary Judgment [Doc. 19] is hereby **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE